

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

**GROVER SELLERS**
**ATTORNEY GENERAL**

Honorable George B. Butler, Chairman
Board of Insurance Commissioners
Austin 14, Texas

Dear Sir:

Opinion No. O-6539
Re: Collection of a gross premium
tax on one of the fire insur-
ance companies doing business
in Texas under Article 7064,
R.C.S., as amended by Chapter
184, Acts of the 47th Legisla-
ture.

We acknowledge receipt of your request for an opin-
ion on the above question, said request reading as follows:

"We desire your opinion on a question which
has arisen in the collection of a gross premium
tax on one of the fire insurance companies doing
business in Texas under Article 7064, R.C.S.,
1925, as amended by Chapter 184, Acts 47th Leg-
islature 1941. The question is whether certain
personal property which the Company owns is to be
regarded as a tax reducing investment under the
Article named.

"Your department has heretofore given us a
ruling that furniture and fixtures are to be re-
garded as an asset for purposes of determining the
entire assets of a company, as a base for comput-
ing the tax. This particular Company contends
that if furniture and fixtures are to be classed
as an asset in the tax computation, they should
also be regarded as an investment under Article
7064 for the purpose of fixing the premium tax
bracket. This contention is based upon the lang-
uage of Article 7064 in which tax reducing invest-
ments are set forth, particularly the concluding
phrase which reads: 'or other property in this

Honorable George B. Butler, page 2

State in which by law insurance carriers may invest their funds.'

"Please advise if the Company's furniture and fixtures, of the value it is used as part of the entire assets, may also be classed as a tax reducing investment under Article 7064."

Article 7064, as amended by Acts 1941, 47th Legislature, page 269, Chapter 184, Article XVIII, Section 1, provides that every insurance corporation, Lloyd's, or reciprocal, and every other organization or concern transacting the business of fire insurance within this State, shall pay certain taxes upon their gross premium receipts. Said article provides further that each of such companies shall file with the Board of Insurance Commissioners a sworn report showing the amount of such premiums collected by it during the preceding year. Provision is made for a reduction in the amount of said taxes as follows:

"If any such insurance carrier shall have as much as one fourth of its entire assets, as shown by said sworn statement, invested in any or all of the following securities: real estate in this State, bonds of this State or of any county, incorporated city or town of this State, or other property in this State in which by law such insurance carriers may invest their funds, then the annual tax of any such insurance carriers shall be one and one half (1 1/2) per cent of its said gross premium receipts; and if any such insurance carrier shall invest as aforesaid as much as one half (1/2) of its assets, then the annual tax of such insurance carrier shall be three fourths (3/4) of one (1) per cent of its gross premium receipts as above defined. . . ."
(Emphasis ours)

There are three statutes which define the securities and property which may be owned and held by such companies:

1. Article 4924, R.C.S., pertains to the real estate which may be purchased or held by fire, marine or inland insurance companies.

Honorable George B. Butler, page 3

2. Article 4705, R.C.S., as amended, defines the property and securities of which the capital stock of any insurance company, other than life, health and accident, may consist.

3. Article 4706, R.C.S., as amended, defines the securities allowed for the investment of funds over and above the paid-up capital stock of such companies and we believe it controls the present inquiry. This article reads in part as follows:

"No company, except any writing Life, Health and Accident Insurance, organized under the provisions of this Chapter, shall invest its funds over and above its paid-up capital stock in any other manner than as follows:

"(a) In bonds of the United States or of any of the States of the United States provided such bonds are, at the time of purchase, interest-bearing or not in default.

"(b) In bonds or first liens on unincumbered real estate in this state or in any other state, country, or province in which company may be duly licensed to conduct an insurance business. . . .

"(c) In bonds or other interest-bearing evidence of indebtedness of any county, road district, water district, municipality, any subdivision of a county, incorporated city, town, school district, sanitary or sewer system bonds or warrants, when special revenues to meet the principal and interest payments of such municipally owned revenue water system and sewer system bonds or warrants shall have been appropriated, pledged or otherwise provided for by such municipality. . . .

"(d) 1. In the stocks, bonds, debentures, bills of exchange or other commercial notes or bills and securities of any solvent divident paying corporation, incorporated under the laws of this state, which has not defaulted in the payment of

Honorable George B. Butler, page 4

any of its obligations for a period of five (5) years immediately preceding the date of the _investment_; . . .

"(e)  In loans upon the pledge of any mortgage, stock, or bonds, or other evidence of indebtedness, acceptable as _investments_ under the terms of this law, . . .

". . . ."  (Emphasis ours)

The term "investment" has been defined many times by various courts, and those definitions are remarkably consistent. Note the following:

"An 'investment' usually means the sum invested or the property purchased by the laying out of money or capital in some species of property for income or profit."  Tippett v. Tippett, Del. Ch., 7 A (2d) 612.

"'Investments' usually means the putting out of money on interest either by loans or by the purchase of income-producing property."  Brown v. Cummings Distilleries Corp., 53 F. Supp. 659.

"'Investment' as commonly used and understood, means the placing of capital or laying out of money in a way intended to secure income or profit from its employment."  In re Bowen, 49 N. E. (2d) 753, 141 Ohio St. 602.

"An 'investment' is generally defined as the conversion of money or circulating capital into some species of property from which an income or profit is expected to be derived in the ordinary course of trade or business."  In re Pennocks Will, 35 N.E. (2d) 177, 285 N.Y. 475.

"To 'invest' money carries the idea of so laying it as to produce a return.  To invest is

Honorable George B. Butler, page 5

not to expend in an unproductive thing." Davis
v. Bullington, 47 S.W. (2d) 555, 164 Tenn. 272.

It is apparent, therefore, that the terms "invest"
and "investment" are used in Articles 7064 and 4706 in their
ordinary connotation, and that money paid out for furniture
and fixtures is not "invested." Although Article 7064 as
amended requires that the value of such furniture and fix-
tures be included in the report of "entire assets," the plain
intendment of that article is to exclude them from the list
of tax reducing investments.

We are not unmindful of the provisions of Article
1320, R.C.S., which deal with the general powers of private
corporations, particularly the following:

"Every private corporation as such has power:

". . . .

"4. To purchase, hold, sell, mortgage or
otherwise convey such real estate and personal
estate as the purposes of the corporation shall
require. . . ."

This article generally authorizes all corporations
to purchase and own such property, but the provisions of the
articles pertaining to these particular corporations, i.e.,
insurance companies other than life, health and accident,
supersede such general provisions insofar as inconsistent
therewith. Article 7064 is not an enabling statute. It is
a tax statute and must be strictly construed. Furniture and
fixtures are not within the statutory definition of tax re-
ducing investments.

Trusting that the foregoing fully answers your in-
quiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Arthur L. Moller
Arthur L. Moller
Assistant

ALM:db